Okay, looks like we're ready to go. Our next case is 23-3096, United States v. Spaeth. Ms. Nichols. Good morning. I'm Paige Nichols on behalf of Matthew Spaeth, the appellant. May it please the court, while Matthew Spaeth was in jail facing federal charges, the United States government secretly collected his attorney-client phone calls. The government later entered into a contract with Mr. Spaeth. Under this contract, Mr. Spaeth agreed to waive a host of rights and claims, and for its part, the government agreed that notwithstanding those waivers, Mr. Spaeth, quote, in no way waives any subsequent claims of ineffective assistance of counsel or prosecutorial misconduct. Today, the government says that Mr. Spaeth actually did in one way, in one dispositive way, waive a subset of those claims, not by way of the plea agreement, but by way of pleading guilty. But the government itself can waive, and the government argues that under what I'm going to shorthand call the rule of Tollett v. Henderson, but we know that the government itself can waive Tollett, and it did waive Tollett here when it wrote that plea agreement. We know the government can waive Tollett because this court said so in Devon. The government can waive Tollett by not raising Tollett in a direct appeal. We know that the government can, in a sense, waive Tollett through a legislative act like the New York state did, and we learned about in the case Lefkowitz by the United States Supreme Court, when a statute says that a claim that would otherwise be barred by a guilty plea is still alive on appeal. So we know from Devon and Lefkowitz that Tollett is a non-jurisdictional rule. It's a rule of finality that the government can relinquish by its own acts, and it did relinquish its interest in finality in these particular claims when it wrote the plea agreement here. What do you think Judge Robinson's central error then was in concluding otherwise? The misinterpretation of the plea agreement or the underlying case law? I think it's more the underlying case law because remember, the judge actually agreed with our reading of the plea agreement earlier in the 2255 litigation in the case called Fomasang, which the judge references in the order that we're appealing from. The judge agreed with us. The government in Fomasang had argued this plea is barred both by the plea agreement and by pleading guilty itself under Tollett, and Judge Robinson said, no, you said that this person in no way waived, because this is a standard plea agreement. It's standard language. And then by the time we got to the order that we're appealing from here, the judge had changed her mind. I just think it's a misunderstanding of Tollett. In fact, some of the language in the judge's order sort of echoes the dissent in Lefkowitz and the dissent in the Ninth Circuit case in Jacobo that this court followed, found persuasive in Devon. So it's probably less a matter of misreading of the plea agreement and more a matter of viewing Tollett as something irreversible, I suppose, because the district court said you can't waive a right that you don't have. But that sounds like the dissent in Lefkowitz. That sounds like the dissent in Jacobo. And so I think the interesting thing about the judge changing the court's mind about this is that this court has said when you read a plea agreement, if it's ambiguous, you read it against the government, right? And in fact, in Reed, and I submitted a Rule 29 letter last week in Reed, this court put it this way. If each party's reading of a plea agreement is equally plausible, this court reads the ambiguity against the government. So does Tollett, let's say I'm leaning towards your position. Does Tollett apply to the ineffective assistance of counsel or to the prosecutorial misconduct piece of the plea agreement? I'm not sure I understand the question. And so right now I'm just arguing that the government waived its interest in finality, its right to invoke Tollett for either claim because that language crosses both claims, right? And in no way waives any subsequent claims of IAC or misconduct. And this is a claim, I mean Schillinger's a claim, really a government-induced IAC, right? And so there let me, I'm sorry, finish your answer. Well, I was just going to move into, you know, whether there's really, how you show that there was an involuntariness of the underlying guilty plea. And, you know, does Schillinger bail you out because it's a per se presumed prejudice or do you still have to show that there's some showing that the plea was involuntary? And here I don't really see how you can show involuntariness absent the, you know, the Schillinger presumption. Can you help me out with that? Sure. I just want to make sure I'm on the same path as the court. So if the government waived reliance on Tollett, we don't have to satisfy Tollett at all. If for some reason the government did not satisfy Tollett, then we have to satisfy Tollett. Does the presumption, and Tollett's, you know, it's a predicate question, right? It's how you get through the door. So if I'm understanding Your Honor correctly, the question is, does Tollett's presumption of prejudice satisfy the prejudice that you would normally have to show to satisfy Tollett to get through the door? You mean Schillinger's presumption of prejudice? Yes. Did I? You said Tollett's presumption. Okay. Thank you. Thank you. Yes, Schillinger's presumption of prejudice. Am I understanding the question correctly? Okay. So, yes, it does.  But that's exactly what presumptions do. And Schillinger has a conclusive presumption. So the point of a presumption is that you don't have to look under the lid to see what's there, right? Because Schillinger made a decision that those kinds of constitutional errors are so egregious. But in Schillinger, those kinds of constitutional errors were errors in the trial itself, which it's a very different animal than a plea agreement, don't you think? It's a different animal. But at the same time, hold on. Get my head straight here. Strickland, Cronick, Hill, which is the plea agreement context, Tollett, are all talking about whether there is some effect on the proceedings that undermines our confidence in the outcome. So even though when you do look under the lid of the presumption, which, again, I think kind of undoes Schillinger if you do that at the doorway when you don't have to do it once you get in the house, but if you do have to look under the lid, it's the same general question. Was there an effect on the proceedings that undermines our confidence in the outcome? In the plea proceeding, it's undermined in the validity of the plea versus the trial. So the presumption works the same way, even though they are different animals, but the presumption still holds. You have this carve-out that says ineffective assistance counsel of prosecutorial misconduct. Do you have to show that Mr. Space's counsel was deficient, either of the two attorneys that he had during these calls? Under Schillinger, we just have to show the Schillinger elements. But Schillinger is not an ineffective assistance of counsel. Let's say the relationship was penetrated. When the plea agreement says ineffective assistance of counsel, it's going on 40 years since Strickland and almost that for Hill, one year less. That's understood, isn't it? The words ineffective assistance of counsel are talking about Strickland and Hill? Yes. Right there, because I'm just trying to figure out what your claim is. If we say that, if we say ineffective assistance of counsel is Strickland and Hill, you have a showing to make that his counsel did not perform competently. And having the calls intercepted doesn't reflect on his counsel one bit, does it? Schillinger recognized that having your attorney-client communications interfered with disables counsel. You're drifting on me or I'm drifting on you. Let me try to come back. I want to pin you down on this because I want to make sure I understand what your position is. On the ineffective assistance carve-out, you have to show deficient performance by his counsel, not by the government, not by Schillinger, not by anything else, that his counsel acted outside the range of competence. And you don't even try to show that. And I don't blame you because counsel didn't do anything wrong. I'm trying to see if that IAC portion of the carve-out, we can just take that off the table. We have argued all through this case, and the district court has treated a Schillinger claim as an IAC claim, because the court walks through Strickland chronic. Chronic is another type of IAC claim that we all understand falls under that general umbrella. Schillinger, I understand what your Honor is saying. Schillinger feels like a different type of claim, and I gather your Honor is asking whether is Schillinger really a claim of, a subsequent claim of ineffective assistance of counsel or prosecutorial misconduct? Well, I don't even have a question on that. It's not an ineffective assistance of counsel for me. And so I'm going over to, but I'm trying to find out from you if you think that there's still ineffective assistance of counsel in play. And if so, what that first prong is met. And if that's off the table, then I want to talk about prosecutorial misconduct. Okay. It's not off the table. I think I understand what your Honor is trying to get at. But we have these categories of six amendment counsel-related error, where you have court-created IAC or prosecutorial-created IAC, like when a court doesn't grant a continuance and somebody argues that caused my lawyer not to be able to do the lawyer's job. So it does fall into that category. It also falls into the category of prosecutorial misconduct, because it's prosecutor-induced deprivation of counsel. And I am running low on time right here. I'll give you some rebuttal time, so please proceed. Okay. Going to the Schiller, I mean, it seems to me the question for us on Schiller is whether we should extend it beyond the trial context, whether the per se rule should be extended beyond the trial context. And you're saying that it should be. And as I understand what you're arguing, and please correct me if I'm wrong, you're using this Schiller presumption to undermine the voluntariness of the plea itself. And that's what I understand your argument to be. So, for me, Tollett is a big red herring, because if you're using Schillinger to attack the voluntariness of the plea agreement, it wouldn't fall under Tollett anyway. Now, you may lose on that claim, but procedurally that is the claim you are making. So, I mean, all of this pages and pages of Tollett, it doesn't really matter, does it? Well, so what I hear your Honor talking about is the merits of our Schillinger claim. I'm trying not to talk about the merits. It's really hard, isn't it? I'm saying, and I think the brief's really kind of confused, that there are two separate issues here. One is, you know, what are you arguing, and does it or doesn't it fall under the Tollett bar at all? And I think what you're arguing is that it's involuntary, which would take you out of Tollett to begin with. And then the second question is, are you right about that Schillinger applies and you get a per se violation here? So, number one, the easiest answer to all of this is we win on issue one, because the government waived Tollett, and everything else gets worked out in the district court. Number two, we are relying on the presumption to establish that the plea is invalid solely for purposes of getting through the Tollett door if we lose on issue one. If we get through the Tollett door, then we will be at the merits place, and when we are at the merits place, all we have to do is what anybody has to do when they are establishing a constitutional claim. We have to meet the Tollett elements, which are an intentional intrusion that was not law enforcement justification. You mean Schillinger again, don't you? Did I say Tollett again? I did. I'm so sorry. Yeah, I do mean Schillinger again. If Schillinger applies in the plea context, which seems to be a question for us. Yes, certainly, and I can think of no reason that it wouldn't apply. Now, we're going to be before this court later on this year or next year on the question of whether it applies in the sentencing context, but this question hasn't been, I mean, it's not what the government's position is here today. I think the government's more answering just our claims, but there's no reason, so Strickland comes along and tells us what is the standard for ineffective assistance to counsel at trial. Hill comes along and says that same standard applies in the plea context. It's going to look a little different because the outcome we're worried about is the plea. Is this a valid plea versus is this a valid jury conviction? Would you reasonably have proceeded to trial rather than entering a plea? Isn't that right? Yes, that's the Hill standard, right. And so what I'm trying to say is the fact that the Supreme Court told us that we're going to talk about this Sixth Amendment problem in the trial and the plea context in the same way, with the same goal in mind. Is there an effect on the outcome that undermines our confidence in the proceedings? We can translate the Schillinger presumption equally as easily to the plea context. That's a good presumption, though. How can there be any, you know, flowing from the eavesdropping, how can there be any effect on his willingness to plead guilty, you know, under the plea bargain agreement that you struck with the government? Well, it's hard for us to know because we never got all the discovery that we wanted. But the roulette case, which is referenced somewhere in our brief and somewhere in the judge's order, in the roulette case, the government used, it's one of the few cases where we actually know what the government did with the information, the government used what they learned from attorney-client phone calls in order to know where this defendant's soft spots were and convince her to take a plea. But on that point, and I think Collett cares about this and I think Strickland and Hill care about this, as far as the range of performance that is not deficient, Mr. Spaeth, in this instance, had he gone to trial and been convicted on the drug charge as well as the 924C that was charged later, would do about 15 more years. And doesn't that enter into the equation on confidence of counsel and strategic choices and so forth? It does. And wouldn't we send it back and say the plea is invalid, it's involuntary, so you can withdraw your plea and we'll schedule you for trial next month. But he's not asked simply to withdraw the plea. And in 2255 proceedings, the court has a much greater range of remedies than we normally have on direct appeal. And so that's why we've asked for some sentencing remedies or vacation of convictions in all those cases. But we could. We could send it back in this instance and say, we don't see how this had any effect because he was charged. There was already a lot of investigation. There were five defendants who had already pleaded. I don't know whether they were cooperators. And so we're not just going to vacate. Instead, go ahead and withdraw your plea. That's a reasonable alternative in this instance, is it not? Well, it's only reasonable if that's what he asked for. So it looks like a good – I hear what Your Honor is saying. It looks like a good plea on paper, so how can I possibly argue that he would have gone to trial instead? I think it's still an open question in this circuit whether negotiating a better plea agreement also satisfies Hill. And that's the thing. It wasn't known at the time what the government had taken from him, how it was using him, why he was getting the agreement he got. I may be messed up on the facts, but I thought that before he entered his plea, he was aware that five phone calls had been recorded by the U.S. Attorney's Office. This is a whole separate issue now because the government has argued procedural default. He pleaded guilty like a minute after we found out that the government had been seizing calls. Whether Mr. Spaeth personally knew or even his lawyer knew that their calls had been seized, I don't have his record on that yet because we never had an evidentiary proceeding here. Didn't the court know about it a couple of months before he pleaded? He pleaded in September, and we were in court in August for the first time on these issues. And so it was – I mean, everything – nobody really knew what was going on, which is why this reservation in the plea agreement was so important, right? Maybe there's something to do with my case there. I better have this reservation here. I mean, I'm not saying that's what happened here. But to go back to the imagining what can happen with – how can the government's seizure of attorney-client communications actually affect the plea, this is why we're relying on the Schillinger presumption because the government's conduct is secret. The government isn't – they have all the information. We don't know how it affects in specific – Well, in this case, I know I read that the government says that the calls were never given to the prosecutor on Mr. Spaeth's case. I don't think I dreamed that. I think I read that somewhere, that they have represented that that information was never communicated to the prosecutor on this case who negotiated the plea agreement. So, again, we have not had a hearing yet, and so I'm not buying that until we have a hearing. All right. I will give you a little bit of rebuttal, but let's go ahead and hear from the U.S. Attorney's Office. Thank you. Good morning, Your Honors. Assistant United States Attorney Brian Clark for the United States with me at council table is Carrie Capwell. She is the first assistant United States attorney and criminal chief for the U.S. Attorney's Office for the District of Kansas. May it please the court. What Mr. Spaeth asks this court to do is really extraordinary and without precedent. First, he asks this court to rewrite a carve-out provision in his plea agreement, to transform it from a provision that defines the rights that he waived in his plea agreement, to one that says that the government waived the right to raise any legal defenses to claims that he may later bring. Is your view that the carve-out is a nullity, and do you appal it? No. We think, and what this court has said in cases like Wilson is that when a waiver is in play, there's a double hurdle that a defendant has to overcome. In this case, neither the district court nor the government has relied on waiver at all. I'm talking about the carve-out. And that's because of the carve-out. It's the carve-out and nullity. In other words, Toled already gives him a right to make an ineffective assistance claim on involuntary plea based on a previous constitution violation. He doesn't need a carve-out for that, so I understand it. So what does the carve-out give him? If there is something, tell me what it is. Yes, it gives him the right to allege ineffective assistance of counsel with respect to sentencing, for example, which is also in play in this case, although he has not alleged a specific sentencing-related ineffective assistance of counsel claim. So that carve-out provision is broad, and basically what it is saying is that the defendant, in that specific waiver provision of the plea agreement, does not waive or give up the rights that he came into the plea agreement with with respect to ineffective assistance of counsel or prosecutorial misconduct claims. I mean, you could have written it that way, but that's not what it says. And when you have just a little bit earlier there, except as limited by United States versus Cochraham, it sure looks to me like you knew how to say except as limited by Tollett. Well, a couple of responses with respect to that, Your Honor. The Cochraham provision earlier in that section of the plea agreement relates only to sentencing, and as I understand it, as a historical matter, it was inserted to make sure that a defendant was able to allege ineffective assistance of counsel with respect to the negotiation of the waiver. That's what was at issue in Cochraham. And now we understand that the Cochraham claims are a subset of the broader carve-out provision that's at the end, but we don't think that those two terms, when read together, create any ambiguity. The carve-out provision begins with the word notwithstanding the foregoing waivers. It's talking about the very broad waivers at the beginning of that section, which say the defendant waives all claims with respect to the prosecution, the conviction, and the sentencing. What's the carve-out for the prosecutorial misconduct intended to cover? I'm sorry? What's the carve-out for the prosecutorial misconduct intended to? It is intended to cover claims, stand-alone claims of prosecutorial misconduct. For example, an outrageous government conduct claim or something of the sort. And just to clarify a point that was discussed earlier, Mr. Spaeth has not alleged a stand-alone prosecutorial misconduct claim. So to your questions, Judge Phillips, I agree with you that ineffective assistance of counsel claims require the defendant, whether you view it as to let or whether you view it as simply under hill, require a defendant to show that his guilty plea was involuntary. Mr. Spaeth was given the opportunity by the district court to allege that the government intrusion, that is the basis for his Schillinger claim, had any effect on his decision to plead guilty or otherwise render his guilty plea involuntary. And he expressly declined to do so. But his argument, as I understand the argument, it is I don't have to because under Schillinger it's per se. And so it's not, they're still challenging the voluntariness of his plea agreement. Would you agree with that? They just say it's a per se. Well, I think what Mr. Spaeth is asking this court to do is to allow Schillinger, as the district court put it, to act as a make way for the voluntariness of the plea agreement. So basically to export Schillinger from the trial context, which is a very different context. I understand you're not answering my question. Okay. The attack is still, whether it's through Schillinger or actual evidence, it's still on the voluntariness of the plea. That is correct. Okay. Then why are we talking about Tollett? Tollett, Tollett, Tollett, Tollett. Even if this wasn't here. I see. If you're attacking the voluntariness of the plea, it's not barred by Tollett. So why can't we just take Tollett off our to-do list and focus on whether you apply Schillinger here? Yes. I see exactly what you're saying. And let me back up a little bit and explain sort of how this unfolded and where we're coming from and how sort of the different claims interact. So Mr. Spaeth is bringing an independent pre-plea Schillinger claim. He says, and you heard Ms. Nichols say, that in his view, all Mr. Spaeth has to do is show the elements of Schillinger. Does not have to show that his plea was actually involuntary. Does not actually have to show that it would have been rational for him to reject the plea and go to trial. So no, in our view, an independent pre-plea Schillinger claim does not necessarily and inherently attack the voluntariness of the plea. Seems to me you're confusing the procedural question with the substantive question. And so if we accept the argument they're making, it's an attack on the voluntariness of the plea. You're saying, but when you look at the argument they're making, they can't prevail. We may agree with you on that, but I still don't think it has anything to do with TALA. And I take the point, I think the reason for the confusion on that particular point is because the standard under TALET and the standard under HIL. So if you view TALET as the procedural question and HIL as the substantive question, the standard is the same. So if they can't meet it for TALET, they can't meet it for HIL and vice versa. And so if it's helpful to view it that way, then I invite the court to do so. I think either way, Mr. Spaeth has not alleged that his guilty plea was involuntary under the controlling standard. He declined to allege that his guilty plea was involuntary. And I think the reason for that, and this gets to one of your questions, Judge Phillips, is because Mr. Spaeth is not asking specifically to withdraw his guilty plea. And the district court put her finger on that precisely. And her concern was that Mr. Spaeth was sort of trying to have it both ways, where he would keep all of the benefits of his plea agreement. And then on top of that, get an additional windfall of either dismissal of his charges with prejudice or a 50% reduction of the sentence, which was already well below the guidelines range based on the plea agreement. Let me, if you look at what he was asked to do, which is to come forward with evidence that shows actual impact, prejudicial impact, on his decision to enter into the plea. As I understand it, there hasn't been any discovery that would have allowed Mr. Spaeth to provide that evidence. Actually, there has been a lot of discovery in the consolidated 2255s. And I would just say that Mr. Spaeth, especially at the point where the district court expressly gave him the opportunity to seek leave to amend his 2255 motion to allege that his guilty plea was involuntary, at that point he had the call recordings. The government still has not received the call recordings, but he knew what was on the call recordings. He knew how the prosecutor negotiated his plea agreement in the first place. He knew what advice he received from counsel. He knew the benefits that he received from the plea agreement. He knew the additional charges and sentencing time that he faced if he had gone to prison. So he has all that he would need, and really more than almost any other defendant would normally have, in order to allege involuntariness of his plea, and yet he declined to do so. Does he have the five calls? He does, and he's had them for a very long time. Before he entered his plea, he's had the transcripts of the calls before he entered his plea? I don't believe that's correct. The timing is not exactly clear to me. I don't know that he had the calls before he entered his plea. I don't think that he had them before he was sentenced, but he certainly had them for a very long time in the 2255 cases. And he was, you know, late in the case, given an opportunity to seek leave to amend his Section 2255 motion in light of all of the discovery, including the calls that he had received. Did he know about the calls when he pleaded? Not the content, not a transcript, but just this happened. My understanding of the record is that when he pled, and certainly by the time he was sentenced, he knew that the government had obtained call recordings from CCA, and that some of those call recordings were of attorney-client calls. But he didn't know his specifically? I don't believe so. Okay. One of the arguments that Mr. Spaeth makes is that this conduct by the government is so egregious and such a clear intrusion on the Sixth Amendment that we should extend Schillinger to the plea context and just say, if you can meet the Schillinger standard, we will presume prejudice. Why isn't that a persuasive argument? I mean, I think the best reasons I can give you is that Supreme Court rejected similar arguments in McMahon and Ruiz, where the Supreme Court said that just because a constitutional violation would render a trial unfair doesn't mean that it would render a guilty plea involuntary. And the two contexts are very different. And it's not an arbitrary difference. It's a really important difference that is rooted in the solemn admission of factual guilt by the defendant. And from Brady to Tillett, the Supreme Court has long held that the reason for that distinction is because the conviction and the sentence are based on the defendant's factual admission of guilt. And so any pre-plea constitutional violation that did not infect that decision to admit factual guilt is simply irrelevant. But that's exactly what they're arguing, is they're arguing that it did. We come back to the question of whether they're challenging the voluntariness of the plea. I disagree. I don't think that he is actually saying that his plea was involuntary. In fact, I mean, I would ask the court to look at page 1191 of Volume 1 of the record. That is Mr. Spaeth's notice of intent not to seek leave to amend his Section 2255 motion. In that, Mr. Spaeth said that he declines to seek leave to amend to attempt to satisfy the Hill Standard for voluntariness. But that's a dispute about whether it's per se. What he's saying is, I'm attacking voluntariness, but I get to pick up the Schillinger rule and apply it here, so it is presumed that I've been prejudiced. And I think maybe if I could use an analogy from the Fourth Amendment context, it might help a little bit. So what I understand Mr. Spaeth is arguing is that he has a stand-alone allegation of a pre-plea Schillinger violation that is independent and separate from his guilty plea. And from what I understand, he's saying it doesn't matter that it's separate because Schillinger is per se. And once I satisfy the elements of Schillinger, it is a per se violation. You don't have to worry about voluntariness. Schillinger takes care of the rest. That would be no different than a defendant coming in and saying, well, there was a Fourth Amendment violation before I pled guilty. And because of that pre-plea Fourth Amendment violation, even though it has nothing to do with my guilty plea, it should still allow me to invalidate the guilty plea. That's not what the law is. The Supreme Court has rejected that in numerous cases, again, from the Brady trilogy, including McMahon and Tillett and the like, that Mr. Spaeth alleges an independent pre-plea constitutional violation that did not actually affect his decision to plead guilty. And I would just add that if you look at the charging benefits and the sentencing benefits that Mr. Spaeth received in the plea agreement, they're extraordinary. The government agreed to dismiss a 924C charge that would have resulted in a mandatory consecutive five-year prison term on top of whatever else he received. In addition to that, the government agreed to jointly recommend a well-below-guideline sentence of 180 months, which was 30 months below the low end of the guideline. And that's what he received. I don't think that any rational defendant under the circumstances would have rejected that guilty plea and instead gone to trial under the circumstances. And therefore, it's hard to see. And really, there's no basis in saying that the independent Schillinger violation that Mr. Spaeth alleges rendered his guilty plea involuntary. He's simply asking for a separate standard that was adopted in a different context to act as a make-away. And the district court was right to say the law doesn't permit that. Any other questions? Well, then isn't Judge Phillips correct that he may be sorry for, you know, be careful what you ask for, that we could just send it back and say we invalidate the plea, go back and try him? I don't think so. And the reason is because the district court already gave Mr. Spaeth that opportunity. This was the district court's concern when it offered Mr. Spaeth an opportunity to seek leave to amend. It said, I see what you're asking for, but you haven't sought leave to withdraw. And I'm worried that if I invalidate your guilty plea and you're re-prosecuted, you may wish you hadn't done this. And so I'm going to give you the chance now. Tell me, do you want to withdraw your plea? Are you going to say that it's involuntary? And he said no. And just if I may, I know I'm over time, but one point I'd like to add with respect to the waiver. Mr. Spaeth has argued repeatedly that the carve-out provision waives all of the government's procedural defenses, legal defenses, and respectfully, that simply cannot be. I mean, under his reading of the carve-out provision, that would include, for example, the one-year statute of limitations in Section 2255F. And there's no way to read the carve-out provision to say that the government can't respond to a not waived claim, arguing that it's time-barred. And if he is right about that, it means that, you know, standard plea agreements with the carve-out language could simply bring formerly time-barred claims and argue that the government had waived its procedural defenses. So with respect to that, I think the plain language of the plea agreement, as the district court has interpreted it for years and predating even Mr. Spaeth's guilty plea, shows that the government has not waived any of its legal defenses. All right. Thank you, counsel. Ms. Floyd, would you give Ms. Nichols two minutes? We've never argued, and we're not going to argue, that the carve-out provision means the government can't raise a statute of limitations defense down the road or a second or successive defense down the road or a procedural default defense down the road. The carve-out language uses the word waiver, and that's what we're focused on here. Waiver is commonly used to describe the effect of a guilty plea under the toll it rule in addition to the effect of the language within the plea agreement. The government stood up and initially just said, this is extraordinary the way they're asking you to read this plea agreement, but really it's the government's request to read this plea agreement that is extraordinary. They haven't offered one case for the proposition that the government retains a toll it interest in finality under a plea agreement that explicitly reserves certain types of claims. Does the plea have to be involuntary here? No. Okay. We would like for the plea agreement to be enforced against the government to the extent that Mr. Spaeth can raise his claim and then seek a remedy appropriate to his claim once he gets to the merits stage. So you're not challenging the voluntariness of the plea? We're not asking to withdraw the plea. Okay. Are you challenging the voluntariness of the plea? Yes. To get through the needle of toll it and based on the presumption, I think Your Honor has stated it correctly, that we are relying on Schillinger's presumption of prejudice to satisfy toll it's requirement that a pre-plea constitutional violation undermine the validity of the guilty plea. If you have the transcript of the calls, why are you not making an argument? As said here, counsel said such and such to Mr. Spaeth and that plainly showed that that somehow affected his decision whether he was going to plead or his sentence or something else. I've been laboring under a misunderstanding that you don't have the transcripts, but if you do, why don't I? Because they're not yet a part of the open record and because we're relying on the presumption. And the presumption is there because of the nature of this particular constitutional violation. And it's there at the trial stage and it should be there at the plea stage. It's equally a critical stage of the proceeding. You have an equally important right to counsel. Your communications with counsel regarding your plea options are secret and it's just as damaging systemically as intrusions that come before a trial. The government says we have the evidence. They don't have the evidence. Well, they had it. They got it. They were the ones who took it in the first place. And I understand, Your Honor, since there's some place in the record where the government says, oh, the prosecutor in this case never heard those calls, but I can point Your Honors to a record in another case that's on appeal before this court right now where that same prosecutor was the head of the U.S. Attorney's Office testified that her credibility was, reputation for credibility was not good. Well, if you have the calls and you haven't provided them, why is it unreasonable for me to assume that they don't matter? There's nothing in them. It doesn't matter. If the presumption of prejudice applies, we don't even ask that question. It's not unreasonable. Of course, it's natural to ask that question. I understand that. But we don't need to ask the question and we don't need to answer the question if the presumption applies. So if we decide that Schillinger should not be extended to the plea context, would you admit that you can't prevail because you didn't make any effort to put on evidence of prejudice? I don't want to completely commit to that, and the only reason I don't want to completely commit to that is because we have the government refusing to provide discovery, and we did get one adverse inference from that refusal from the district court, and we would, depending on kind of what happens down the road, I mean, that might shut us down. I'm just, in this moment, I'm not prepared to say, yes, absolutely, that would shut us down, because I feel like we may yet have an opportunity to argue that we should have an adverse inference in our favor on that element as well. All right, counsel, we appreciate the argument. You're excused and the case shall be submitted.